IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ROBBIN AMANDA BAYSE, a/k/a ROBERT BAYSE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV 122-024 |
| TED PHILBIN, et al., | ) ) ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, commenced the above-captioned civil rights case *pro se* and *in forma pauperis* ("IFP"). Defendants filed pre-answer motions to dismiss, (doc. nos. 55, 57), which Plaintiff opposes, (doc. no. 64). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to dismiss be **GRANTED** in part and **DENIED** in part.

I.    BACKGROUND

    A.    **Procedural History**

The Complaint initially named twenty-two Defendants and alleged constitutional violations in the treatment of Plaintiff's gender dysphoria. (See doc. no. 1.) The court screened the Complaint and allowed Plaintiff to proceed on Eighth Amendment claims against ASMP Warden Ted Philbin, Mental Health Director Ms. Young, Mental Health Counselor Ms. Davis, Psychologist Dr. Clements, Deputy Warden of Care and Treatment Ms. Shelton, CERT Officer

1

Smith, Deputy Warden of Security Ms. Harvey, and Captain Gaines. (Doc. no. 22.) On September 23, 2022, Defendants Philbin, Shelton, Harvey, Gaines, and Smith filed a motion to dismiss, arguing Plaintiff (1) failed to exhaust administrative remedies; and (2) cannot recover monetary damages on official capacity claims because of the Eleventh Amendment. (See doc. no. 55-1.) The same day, Defendants Young, Davis, and Clements filed a motion to dismiss based on failure to exhaust administrative remedies, but also for failure to state a claim of deliberate indifference and no right to recover punitive damages. (See doc. no. 57-1.)

In response, Plaintiff argues (1) exhaustion occurred due to grievance nos. 301574, 322074, 328621, 327883, and 328181; (2) the Complaint states a claim upon which relief may be granted; and (3) Defendants are not entitled to immunity. (See doc. no. 64.). In reply, Defendants Philbin, Shelton, Harvey, Gaines, and Smith withdrew their exhaustion argument. (See doc. no. 67.) Defendants Young, Davis, and Clements did not withdraw the exhaustion argument, but instead argued Plaintiff failed to (1) authenticate grievance receipts submitted along with the response brief; and (2) properly exhaust grievance nos. 328181, 328621, and 327883. (See doc. no. 68.). Plaintiff submitted two sur-reply briefs, stating the grievance and appeal receipts are true and Plaintiff never received a copy of any of prior appeals to present as further evidence. (See doc. nos. 69, 70.)

B.     **Complaint Allegations**

The Complaint alleges Plaintiff is a transgender woman with gender dysphoria and borderline personality disorder who has been on a treatment plan for these conditions since October 2019. (Doc. no. 1, p. 6; doc. nos. 1-1 to 1-2.) The plan provides Plaintiff should present, dress, and be treated as a woman, and recommends gender-affirming hormone treatment and therapy. (Doc. no. 1-1 to 1-2.) In June 2020, Defendants Philbin, Harvey, Shelton, Young, and

2

Davis told Plaintiff the treatment plan for gender dysphoria and borderline personality disorder would no longer be followed, and Plaintiff would only be treated for anxiety and depression. (Doc. no. 1, p. 6.)  Plaintiff "would have to remove [her] makeup, earrings, nail polish, and cut [her] hair." (Id.) "Each Defendant" also made inappropriate comments at unspecified times, such as "You are in a man's prison. You have a penis between your legs." (Id.) Plaintiff generally alleges "treatment for gender dysphoria was stopped for reasons other than medical." (Id. at 11.)

By letter dated August 25, 2020, the Southern Poverty Law Center accused the Georgia Department of Corrections ("GDC") of violating Plaintiff's constitutional rights by (1) using excessive force against Plaintiff; (2) failing to follow the treatment plan; (3) denying and questioning Plaintiff's gender identity; and (4) threatening Plaintiff with restrictions on gender expression. (See id. at 11; doc. no. 1-3.) The excessive force allegation discussed in the letter are not mentioned in the Complaint. The letter was addressed to Defendant Philbin and nonparties Timothy Ward, Javel Jackson, Sharon Lewis, and Jennifer Ammons.

In September 2020, Plaintiff attended a treatment planning meeting with Defendants Clements and Young. (Doc. no. 1, p. 7.) When Plaintiff asked whether Defendant Clements knew anything about gender dysphoria, Defendant Young instructed Defendant Clements to not answer, explaining Plaintiff "had filed paperwork against us and we are in litigation." (Id. at 8.) On March 3, 2021, Defendant Gaines ordered Plaintiff to sit for a haircut. (Id.) Plaintiff showed Defendant Gaines the treatment plan, but he refused to look at it and said, "You are in a male prison. You will get your hair cut and follow the male standards." (Id. at 9.) Two CERT officers, including Defendant Smith, then forcefully held Plaintiff down in a barber's chair while an inmate cut Plaintiff's hair. (Id.) Plaintiff cried and begged them to stop. (Id.) Plaintiff alleges Defendants Philbin and Harvey approved and ordered the forced haircut. (Id.) Afterwards, Plaintiff was taken

3

to the Chronic Stabilization Unit.  (Id.)  Plaintiff attempted suicide on March 5, 2021, after leaving the Chronic Stabilization Unit.  (Id.)

In June 2021, Plaintiff attended another treatment planning meeting with Defendants Davis, Clements, and Young as well as nonparty Dr. McKennon.  (Id. at 10.)  Plaintiff told them the cessation in gender dysphoria treatment caused twenty anxiety attacks since March and thoughts of self-harm and suicide.  (Id.)  Defendant Davis explained, "Your primary diagnosis of gender dysphoria was replaced with borderline personality disorder.  You will only be treated for anxiety and depression."  (Id.)  Subsequently, during the period of November 6 to December 10, 2021, Plaintiff committed twelve acts of self-harm.  Defendants Philbin, Harvey, Gaines, and Young were notified of the incidents but did nothing.  (Id.)

Plaintiff presented the claims through the grievance process, and the grievances and subsequent appeals were either denied, unanswered, or filed out of time.  (Id. at 3-4.)  For relief, Plaintiff requests an injunction requiring compliance with the treatment plan and provision of proper medical care including sex reassignment surgery.  (Id. at 12.)  Plaintiff also seeks punitive damages of $20,000.  (Id.; doc. no. 64, p. 3.)  Plaintiff is suing each Defendant in their official and individual capacities.  (Doc. no. 64, p. 3.)

### C. Plaintiff's Relevant Grievance History

Both motions to dismiss rely on the Declaration of Haley Chester, Grievance Coordinator at ASMP.  (Doc. no. 55-2; doc. no. 57-2.)  Ms. Chester is familiar with the GDC grievance process, and her responsibilities as Coordinator include ensuring compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances.  (Doc. no. 55-2, Ex. A, Chester Decl. ¶¶ 1-3.)

Ms. Chester has identified seventeen grievances Plaintiff filed between June 2020 and February 28, 2022, the date the Clerk of Court filed Plaintiff's complaint. (Id. ¶¶ 13-14.) Plaintiff signed the complaint on January 28, 2022. See Houston v. Lack, 487 U.S. 266, 276 (1988) (deeming prisoner document filed on the date of delivery to prison officials for mailing); United States v. Glover, 686 F.3d 1203, 1205 (11th Cir. 2012) ("Unless there is evidence to the contrary . . . we assume that a prisoner's motion was delivered to prison authorities on the day he signed it."). Grievance nos. 309340, 312497, 318714, 328613, and 309338 were denied or resolved but not appealed. (Id. at ¶¶ 14-15 & Attachs. 3-5.) Plaintiff appealed grievance nos. 312105, 333171, and 333415, but the appeals were denied on procedural grounds. Grievance nos. 335954 and 335067 were denied after the Plaintiff filed this lawsuit. (Id. at ¶ 14 & Attachs. 3-4.) Two grievances were unrelated to Plaintiff's Eighth Amendment claims: (1) grievance no. 312312, which was referred to the Criminal Investigations Division; and (2) grievance no. 310560, which was fully exhausted. (Id. at ¶¶ 14, 17 & Attachs. 3, 7.) Five grievances remain, four of which were not appealed—nos. 310574, 322074, 327883, and 328621—and one of which was improperly appealed—no. 328181. Plaintiff's response to the motions to dismiss only discuss these five grievances, arguing all five were properly appealed and exhausted. (See doc. no. 64, pp. 5-6, 17-19.)

Plaintiff filed grievance no. 310574 on June 12, 2020, alleging Defendants Young and Davis and non-party Mayo changed the treatment plan because they believed Plaintiff "was born with a penis, that [Plaintiff] was male." (Doc. no. 55-2, Attach. 6, pp. 205-06.) The grievance was denied on August 5, 2020, and a prison official signed the acknowledgement receipt because Plaintiff refused to sign. (Id. at 207.) Plaintiff provided a signed receipt confirming the filing of an appeal on August 18, 2020. (Doc. no. 64, p. 17.)

5

Plaintiff filed grievance no. 322074 on March 19, 2021, alleging Defendants failed to follow the treatment plan by insulting Plaintiff, making comments about Plaintiff's genitalia, forcefully cutting Plaintiff's hair on March 3, 2021, and not allowing Plaintiff to see a competent mental health provider. (Doc. 55-2, Attach. 4, pp. 72-83.) The grievance was denied on April 13, 2021, and two prison officials acknowledged Plaintiff's receipt of the decision April 20, 2021, because Plaintiff was in COVID quarantine. (Id. at 75.) Plaintiff provided a signed receipt confirming the filing of an appeal on April 28, 2021. (Doc. no. 64, p. 17.)

Plaintiff filed grievance no. 327883 on August 10, 2021, alleging Defendant Clements stated Plaintiff would not receive treatment for gender dysphoria, the treatment plan was changed to indicate a diagnosis of borderline personality, and Defendant Philbin allowed Pascal to forcefully cut Plaintiff's hair. (Doc. 55-2, Attach. 4, pp. 85-99.) This grievance was rejected on August 19, 2021, for exceeding the page limit and for having writing on the backside of a page, and Plaintiff acknowledged receipt of the denial on August 24, 2021. (Id. at 90.) Plaintiff provided a signed receipt confirming the filing of an appeal on August 31, 2021. (Doc. no. 64, p. 18.)

Plaintiff filed grievance no. 328181 on August 20, 2021, alleging on August 18, 2021, Defendant Clements referred to Plaintiff as male, misdiagnosed Plaintiff with anxiety and depression associated with borderline personality disorder; and refused to provide treatment for gender dysphoria. (Doc. 55-2, Attach. 4, p. 127.) The grievance was denied on August 25, 2021, and Plaintiff appealed the grievance on August 27, 2021. (Doc. 55-2, Attach. 4, pp. 125-36.) The appeal was rejected as containing irrelevant and unnecessary threats, profanity, insults, or racial slurs. (Id. at 131.)

Plaintiff filed grievance no. 328621 on August 30, 2021, alleging (1) Defendant Ward never responded to the August 2020 letter from the Southern Poverty Law Center; (2) Plaintiff has

6

been ridiculed and forced to cut Plaintiff's hair because of the letter; and (3) Defendant Young told Defendant Clements not to answer Plaintiff's questions about gender dysphoria due to pending litigation.  (Doc. 55-2, Attach. 4, p. 100-24.)  This grievance was rejected on August 31, 2021 as untimely, and prison officials acknowledged Plaintiff's receipt of the denial on September 8, 2021, because Plaintiff refused to sign.  (Id. at 103.)  Plaintiff provided a signed receipt confirming the filing of an appeal on September 14, 2021.  (Doc. no. 64, p. 18.)

## II.     DISCUSSION

### A.     The Motions to Dismiss For Failure to Exhaust Should Be Denied

#### 1.     The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendants' motion will be granted.  See Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant, 530 F.3d at 1373-74).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not

decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

8

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

### 2.    The Administrative Grievance Procedure

According to the Counselor, the administrative grievance procedure applicable in this case is the version of the GDOC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Chester Decl. ¶¶ 3-12 & Attach. 1.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). At ASMP, the administrative remedies procedure commences with filing an Original Grievance with a counselor. Id. § IV(C)(1)(c) & (d); Chester Decl. ¶ 7. The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. PN 227.02 § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-

calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. §§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2)(a). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but the grievance coordinator or Commissioner's designee may waive the time limit for good cause. Id. § IV(C)(2)(b); Chester Decl. ¶ 10. The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal, at which time the grievance procedure is complete. PN 227.02 § IV(C)(2)(e).

### 3. Turner Step One

Step One from Turner requires the Court to take Plaintiff's facts as true where there is a conflict. Turner, 541 F.3d at 1082-83. While Plaintiff generally claims full exhaustion, Plaintiff does not dispute the facts presented by Defendants proving non-exhaustion of grievance nos. 309340, 312497, 318714, 328613, 309338, 312105, 333171, 333415, 335954, 335067, 312312, and 310560. Defendants contend, and Plaintiff does not dispute, that Plaintiff did not file an appeal for grievance nos. 328613, 309338, and 318714. Exhaustion requires that Plaintiffs use "all steps that the agency holds out." Woodford, 548 U.S. at 90. Because Plaintiff did not take the opportunity to appeal the decisions made in grievances nos. 328613, 309338, and 318714, these grievances were not exhausted.

Grievance nos. 309340, 312497, 312105, 333415, 312312, and 310560 do not relate to claims made by Plaintiff in the initial complaint. Grievance no. 309340 concerns Plaintiff not receiving mediation because Plaintiff did not present an ID. (See doc. no. 55-2, p. 55.) Grievance

10

nos. 312497, 312312, and 333415 concern unrelated disputes between Plaintiff and officers not named as defendants. (Id. at 62, 145, 173.) Grievance no. 312105 concerns Plaintiff's lost property. (Id. at 107.) Grievance no. 310560 concerns Dr. Rasheen's refusal to treat Plaintiff's gender dysphoria due to a religious objection and makes no claim of deliberate indifference to a serious medical need. (Id. at 213.) Because these six grievances do not relate to Plaintiff's claims of deliberate indifference, whether Plaintiff exhausted is irrelevant. See Turner v. Sec'y Pennsylvania Dep't of Corr., 683 F. App'x 180 (3d Cir. 2017) (holding grievances for unrelated claims "could not provide evidence of compliance with the PLRA's exhaustion requirement"). Further, there is no dispute that grievance nos. 309340 and 312497 were not appealed regardless, and therefore not exhausted.

Grievance no. 333171, as well as grievance no. 333415 discussed *supra*, were also rejected on procedural grounds on appeal. Plaintiff filed grievance no. 333171 after the deadline established by the grievance policy. (Doc. no. 55-2, p. 140.) Grievance no. 333415 involved multiple issues and incidents in violation of the SOP's single-issue policy. (Id. at 148.). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances or appeals, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159. A prisoner has also not exhausted administrative remedies when the governing body has not reviewed the merits of a complaint at the "last available stage of administrative review." Whatley v. Smith 898 F.3d 1072, 1083 (11th Cir. 2018). Because grievance nos. 333171 and 333415 were only reviewed on procedural grounds and not on the merits at the last stage of administrative review, these grievances were not exhausted.

Grievance no. 335067 was answered on March 10, 2022, and Plaintiff's appeal to grievance no. 335954 was answered on May 10, 2022. (Doc. no. 55-2, pp. 154, 226.)

11

Grievance nos. 335067 and 335954 were therefore not exhausted *prior* to Plaintiff submitting the Complaint on January 28, 2022.  Exhaustion of administrative remedies is a precondition to filing an action in federal court, and the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole, 312 F. App'x at 166.

Concerning grievance no. 328181, Plaintiff concedes the initial grievance was addressed on the merits but argues the appeal was improperly denied on procedural grounds.  This is meritless, however, because the grievance policy clearly requires rejection of any grievance that includes irrelevant or unnecessary threats, profanity, insults, or racial slurs.  "[A] prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance *on the merits* at the last available stage of administrative review."  Whatley, 898 F.3d at 1083 (emphasis added).  Plaintiff failed to exhaust grievance no. 328181 because the appeal violated SOP IV(C)(1)(e)(ii), and the appeal was properly rejected on procedural grounds at the last available stage of administrative review.

Plaintiff has provided receipts confirming a timely appeal of grievance nos. 322074, 327883, 328621, and 310574.  Defendants only argue these grievances were unexhausted because they were not appealed.  Plaintiff's receipts create a factual dispute that moves this analysis into Step Two.  Turner, 541 F.3d at 1082-83.

### 4. **Turner Step Two**

Step Two allows the Court to makes findings to resolve the disputed factual issues, with the defendant bearing the burden of proving the plaintiff has failed to exhaust administrative remedies. Defendants submit evidence the Central Office properly rejected grievance no. 327883 because it contained extra pages, and grievance no. 328621 because it concerned events occurring more than ten days prior.  (Doc. 55-2, pp. 103, 120).  Plaintiff submitted evidence to show timely

12

appeal of both denials but no ruling on these appeals. (Doc. no. 64, p. 18.) Defendants did not produce a ruling on the appeals. The resulting evidentiary gap leaves the Court with two equally plausible scenarios, i.e. (1) Plaintiff properly exhausted if the appeals board answered Plaintiff's grievances on the merits; and (2) Plaintiff did not properly exhaust if the appeals board denied the appeals on procedural grounds. The gap in evidence means Defendants have thus not met their burden to show Plaintiff failed to exhaust administrative remedies as to grievance nos. 227883 and 328621.

The record is clear Plaintiff properly filed grievance nos. 310574 and 322074. The only question is whether the appeal receipts submitted into evidence by Plaintiff are authentic, which Defendants Philbin, Shelton, Harvey, Gaines, and Smith have conceded. The Court finds little reason to doubt the authenticity of these receipts. Defendants bear the burden of proving failure to exhaust, and Defendants Young, Davis, and Clements have not met their burden. For all of these reasons, Defendants' motions to dismiss for failure to exhaust should be denied.

**B.    The Motion to Dismiss For Failure to State a Claim Should Be Granted In Part Because Plaintiff Has Stated a Viable Deliberate Indifference Claim But Plaintiff Cannot Recover Monetary Damages on Official Capacity Claims**

The Eleventh Amendment bars Plaintiff's official capacity claims for monetary relief against Defendants Philbin, Shelton, Harvey, Gaines, and Smith, and their motion to dismiss should be granted only as to those claims. Kentucky v. Graham, 473 U.S. 159, 169 (1985). As for the deliberate indifference claim, the Court found at screening the Complaint arguably states a claim based on Defendants' alleged refusal to treat Plaintiff's gender dysphoria. (Doc. no. 22, p. 4 (citing Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1272 (11th Cir. 2020) (holding failure to provide treatment for gender identity disorder can violate Eighth Amendment); Kothmann v. Rosario, 558 F. App'x 907, 910 (11th Cir. 2014) (same).) "Failure

13

to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (*per curiam*); Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Court must also consider Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8. Id. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678. Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson, 551 U.S. at 94. However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) injury caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*). To satisfy the objective component regarding a serious medical need, a prisoner must allege the

14

medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to a serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Plaintiff alleges facts sufficient to state a claim for deliberate indifference to a serious medical need. First, gender dysphoria is a serious medical need, and Plaintiff alleges a diagnosis of gender dysphoria. See Bayse v. Dozier, No. 518CV00049TESCHW, 2019 WL 3365854, at *5 (M.D. Ga. May 21, 2019) ("the record indicates Plaintiff's gender dysphoria presents a serious medical need"), *adopted by* 2019 WL 2550321 (M.D. Ga. June 20, 2019); see also Keohane, 952 F.3d at 1272 (finding no dispute between parties that inmate's gender dysphoria constituted a serious medical need).

Second, Plaintiff must allege Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223. Plaintiff does so by alleging Defendants (1) were aware of the dysphoria diagnosis and related treatment plan, as well as Plaintiff's extensive history of self-harm and suicide attempts; (2) made derogatory comments about the condition; (3) refused to follow the treatment plan; and (4) deliberately acted contrary to Plaintiff's alleged treatment requirements.

Defendants assert the Complaint presents nothing more than a difference in medical opinion, citing the change in Plaintiff's diagnosis and treatment from gender dysphoria to borderline personality disorder. However, Plaintiff alleges Defendants pushed for the diagnosis change to avoid the treatment plan, not because Plaintiff's original diagnosis of gender dysphoria was incorrect or outdated. Discovery is necessary to sort out these facts. For now, it is enough Plaintiff's complaint allegations satisfy the elements of an Eight Amendment deliberate indifference claim. See Brooks v. Wilkinson Cnty., Ga., 393 F. Supp. 3d 1147, 1164 (M.D. Ga. 2019) ("not just any treatment will do—an inmate is constitutionally entitled to medical care that is adequate to meet the needs of their particular situation."); see also Bingham v. Thomas, 654

F.3d 1171, 1176 (11th Cir. 2011) ("An Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment."); Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1169 (11th Cir. 1995) ("The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly interfering with treatment once prescribed"); Snow v. McDaniel 681 F.3d 978, 988-89 (9th Cir. 2012) (finding issue of fact when defendants "ignore outside expert advice, relying solely on their own medical judgment" to determine whether the course of conduct was "medically unacceptable and subjectively reckless."), *overruled on other grounds by* Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014).

The present case is materially distinguishable from Plaintiff's prior deliberate indifference cases, where Plaintiff merely disagreed with the course of treatment provided for gender dysphoria.  Cf. Bayse v. Holt, No. 1:17-CV-962-WSD-LTW, 2017 WL 3911244, at *3 (N.D. Ga. Sept. 7, 2017) (finding no deliberate indifference when Plaintiff is denied specific type of gender dysphoria treatment); Bayse v. Dozier, No. 518CV00049TESCHW, 2019 WL 2550321, at *3 (M.D. Ga. June 20, 2019) (same).  Here, in contrast, Plaintiff alleges a deliberate refusal to recognize and provide any treatment for this condition.  Because the Court does not recommend the motion to dismiss be granted, Plaintiff's related argument to dismiss the punitive damage claims is moot.  Cf. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304 (11th Cir. 2009) ("where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.").

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants Young, Davis, and Clements' motion to dismiss be **DENIED**, (doc. no. 57), and Defendants Philbin, Shelton, Harvey, Gaines, and Smiths' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, (doc. no. 55). Plaintiff's official capacity monetary damages claims against Defendants Philbin, Shelton, Harvey, Gaines, and Smith should be **DISMISSED** and the case should proceed as to Plaintiff's Eighth Amendment claims against Defendants for deliberate indifference regarding Defendants' treatment of Plaintiff's gender dysphoria.

SO REPORTED AND RECOMMENDED this 23rd day of February, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA